UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED HEALTHCARE SERVICES, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HOSPITAL PHYSICIAN SERVICES SOUTHEAST, P.C., et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>1:23-CV-05221-JPB |

# ORDER

This matter comes before the Court on Hospital Physician Services Southeast, P.C., InPhyNet Primary Care Physicians Southeast, P.C. and Redmond Anesthesia & Pain Treatment, P.C.'s (collectively, "Defendants") Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 29]. This Court finds as follows:

## BACKGROUND

United[1] is the largest healthcare provider network in the United States. [Doc. 27, p. 1]. As the largest healthcare provider network, United administers

---

[1] "United" refers collectively to Plaintiffs United Healthcare Services, Inc., UnitedHealthcare Insurance Company and UMR, Inc.

health care benefits for over 80 million people.  Id.  This means that United reviews claims for medical services provided to its members and pays reimbursements to the medical providers.  Id.

United reimburses claims rendered by both "in-network" and "out-of-network" providers.[2]  As to out-of-network providers, United asserts that it must reimburse those providers at rates that are determined by using the methodologies set forth in the specific healthcare benefits plans (the "Plans").[3]  Id. at 3.  In many instances, the Plans allow United to negotiate agreed reimbursement amounts for services with out-of-network providers.  Id.  Barring such agreements, however, the Plans contain rates or methodologies for determining the Plans' reimbursement amount.[4]  Id.  United concedes that when reimbursement is determined by the rates or methodologies established by the Plans, the reimbursement amount is typically

---

[2] The Plans provide access to United's network of physicians and hospitals where participants can receive care at rates negotiated by United.  A contract between United and a provider for treatment of plan participants is known as a network contract, and providers who enter those agreements are in-network providers.  The parties to a network contract have agreed to specific amounts for covered services.  Conversely, out-of-network providers are those providers that do not have contracts with United for the reimbursement of expenses.

[3] The Plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

[4] For example, Plan B states that an out-of-network provider will be paid "based on the reasonable and customary rate and not the amount charged by the provider." [Doc. 27, p. 17].

2

less than the provider's billed charges.  Id.  In other words, United does not reimburse the out-of-network provider at the full amount billed.

TeamHealth, which operates in forty-seven states, is the largest physician staffing, billing and collections company in the country.  Id. at 2; [Doc. 29-1, p. 5]. Medical groups affiliated with TeamHealth have sued United in nine of the forty-seven states in which they operate.[5]  [Doc. 29-1, p. 5].  In these cases, TeamHealth affiliates seek to recover their full-billed charges from United where United has calculated different and lower benefit amounts in accordance with the rates and methodologies stated in the Plans.[6]  [Doc. 27, p. 7].

Defendants, who are owned by TeamHealth, are healthcare staffing companies that operate out of Georgia hospitals.  Id. at 2.  Over the last five years, Defendants have provided emergency and non-emergency medical services to patients whose benefits are administered by United.  Id.  Because Defendants do not have a contract with United, these medical services are considered out-of-

---

[5] The nine states are as follows:  New York, New Jersey, Pennsylvania, Florida, Texas, Oklahoma, Nevada, Arizona and Michigan.

[6] The suits, which essentially claim that United's rates are unlawfully low, assert various state law claims, which include, but are not limited to, unjust enrichment, quantum meruit, state RICO laws, common law conversion, civil conspiracy, good faith and fair dealing or consumer protection law.  [Doc. 27, p. 7].

network.  Id.  According to United, Defendants have consistently demanded reimbursement from United at 100% of their billed charges even though none of the Plans allow for reimbursement at that level.  Id. at 25.  Moreover, United contends that Defendants consider these claims "disputed" and that they will remain disputed unless reimbursed at 100%.  Id. at 26.  Although Defendants have not filed an action against United in Georgia, United asserts that TeamHealth has pursued litigation as a strategy to increase their profits and has threatened litigation against United.  Id. at 29.  Specifically, TeamHealth's Chief Executive Officer ("CEO") told United that "We've gotten really good at the litigation route and have a template to file [a complaint] in every state for every contract."  Id. at 30.  The CEO also told United that TeamHealth will file suit anywhere a network contract between United and a TeamHealth affiliate is terminated by United.  Id.

In this action, United seeks declaratory relief relating to the reimbursement of these out-of-network claims.  According to United, it faces the choice of:  (1) complying with its obligations under federal law (ERISA) to calculate benefits in accordance with the payment rates and methodologies in the Plans when reimbursing Defendants for out-of-network services; or (2) acquiescing to TeamHealth's contention that state law requires United to reimburse claims from Defendants at their full-billed charges.  Id. at 7.  Ultimately, United seeks a

declaration that any claim that seeks reimbursement in excess of the amount determined in accordance with the rates and methodologies stated in the Plans for out-of-network services are preempted by ERISA and the Supremacy Clause of the United States Constitution.

Defendants filed the instant Motion to Dismiss on February 8, 2024. [Doc. 29]. In the motion, Defendants assert that the Court lacks subject matter jurisdiction. After the motion became ripe, United filed a Motion for Leave to File Surreply and a Conditional Motion for Jurisdictional Discovery. [Doc. 38]; [Doc. 39]. On July 1, 2024, United filed a Notice of Supplemental Authority. [Doc. 41].

## LEGAL STANDARD

Challenges to subject matter jurisdiction, which are brought pursuant to Federal Rule of Civil Procedure 12(b)(1), take two forms—facial attacks and factual attacks. A facial attack questions subject matter jurisdiction based on the allegations in the complaint alone. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). This is not the case for a factual attack, which contests jurisdiction "in fact, irrespective of the pleadings. In resolving a factual attack, the

district court may consider extrinsic evidence such as testimony and affidavits." Morrison, 323 F.3d at 925 (citation omitted). Because extrinsic evidence may be considered, "[a] district court evaluating a factual attack on subject matter jurisdiction . . . 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2001). Importantly, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002). Defendants' attack in this case is factual.

## ANALYSIS

Defendants argue that dismissal is appropriate for two reasons. First, Defendants contend that the Court lacks jurisdiction because there is no actual controversy between the parties. Second, and alternatively, Defendants assert that the Court should exercise its discretion to deny declaratory relief.

**I. The Controversy Requirement**

United brings this case pursuant to the Declaratory Judgment Act ("DJA"), which states, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

6

seeking a declaration." 28 U.S.C. § 2201(a). Congress limited jurisdiction under the DJA to actual controversies "in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995).

In all cases arising under the DJA, "the threshold question is whether a justiciable controversy exists." Id. at 415. The controversy requirement is determined on a case-by-case basis. Id. Importantly, "[t]he controversy must be more than conjectural," and "for a controversy to exist, 'the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941)).

The Court will first analyze whether there is a substantial controversy between parties having adverse legal interests. Here, the record shows that Defendants maintain that they are entitled to 100% reimbursement for services rendered to patients out-of-network. United, on the other hand, contends that it is not required to pay 100%. Instead, United insists that it must reimburse at the rates determined by the Plans. Importantly, Defendants have made clear that until

United pays the full amount of the claim, the claim is disputed. Given these opposing positions, the Court finds that there is a substantial controversy between parties with adverse legal interests.

Next, the Court must analyze whether the controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment. As an initial matter, the Court recognizes that Defendants have not initiated suit against United regarding claims in Georgia. The Court, however, cannot ignore that TeamHealth affiliates have sued United in nine states where United has reimbursed at amounts less than 100%. Furthermore, TeamHealth's CEO told United that TeamHealth was good at the litigation route and had a template to file a complaint in every state. The CEO also told United that TeamHealth will file suit anywhere a network contract between United and a TeamHealth affiliate is terminated by United. Given this threat of litigation, the Court finds that United has shown that the controversy is of sufficient immediacy to warrant the issuance of a declaratory judgment.

The Court is not persuaded by Defendants' argument that the controversy requirement is not satisfied because Defendants have no present intent to sue United over claims arising in Georgia. To support their motion, Defendants presented the Declaration of Kent Bristow, who is the Senior Vice President of

Revenue Management for TeamHealth. [Doc. 29-1, p. 3]. Bristow stated that in that role, he oversees disputes with insurance companies related to billing and reimbursement for TeamHealth-affiliated medical practices. Id. Notably, Bristow explained that he has the authority to determine what reimbursement rates are acceptable to TeamHealth and its affiliates, including Defendants, and whether to take legal action against health insurers, such as United, regarding inadequate rates of reimbursement. Id. at 4. In his Declaration, Bristow confirmed that TeamHealth-affiliated medical groups are located in forty-seven states and that they have sued United in nine of those states. Id. at 5. Significantly, Bristow explained that TeamHealth-affiliated medical groups "are selective and deliberate about whether and when to take legal action" against an insurer. Id. at 5. As such, Bristow asserted that a decision for a TeamHealth-affiliated medical group in a certain geographic market to bring an action against an insurer is not indicative of an intent for different affiliates in different markets to do the same. Id. Particularly relevant here, Bristow stated that Defendants have no intent to take legal action against United regarding the claims at issue in the case and have never indicated otherwise. Id. at 4.

      The problem with Bristow's Declaration is that it only reflects a present intent not to sue—not a covenant not to ever sue United. As a general rule, a

covenant not to sue which merely "suspends" the threat of suit instead of "extinguishes" it will not suffice to divest the court of jurisdiction. YKK Corp. of Am., Inc. v. Silver Line Bldg. Prods. Corp., No. CV 305-155, 2007 WL 9711195, at *4 (S.D. Ga. May 14, 2007). As stated above, Bristow provided a Declaration which stated "[p]resently, the Georgia Medical Groups have no intent to take legal action against United regarding the Litigation Medical Claims." [Doc. 29-1, p. 4]. Importantly, this Declaration does not negate the possibility of an action in the future regarding the medical claims. Moreover, this type of present intention not to sue does nothing to alleviate United's potential liability for past, present or future conduct. Indeed, "[i]ntentions . . . may change over time." C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 881 (Fed. Cir. 1983).[7] Because the threat to sue is not extinguished by Bristow's Declaration, the Court finds that United has a

---

[7] In C.R. Bard, the defendant submitted an affidavit that said he had and has no intention of suing for infringement. 716 F.3d at 881. At oral argument, the defendant again reiterated that he would not sue the plaintiff based on the facts presently known to him. Id. Ultimately, because the defendant never said that he would not sue, the court concluded that the plaintiff had a reasonable apprehension that the defendant may bring a suit at some point in the future. Id. Defendants contend that Bristow's Declaration is different because it represents "an expression of present intent based on the current status quo" and "should conditions change at some point in the future, it is possible that intentions could change in response." [Doc. 31-2, p. 3]. In other words, Defendants assert that they would only sue in response to an "unforeseen, exogenous change in circumstances." [Doc. 33, p. 12]. The Court is not convinced that this promise not to sue is materially different from the one in C.R. Bard.

10

reasonable apprehension that Defendants may bring an action in the future. See Classic Liquor Imps., Ltd. v. Spirits Int'l B.V., 151 F. Supp. 3d 451, 458–59 (S.D.N.Y. 2015) (determining that a present intent not to sue was not sufficient to divest the Court of jurisdiction).

To summarize, the Court finds that United has met its burden of proof to show jurisdiction.  Even after considering Bristow's Declaration regarding Defendants' present intention not to sue, the Court is persuaded that this case presents a live controversy over the proper rate of reimbursement for out-of-network claims.  Specifically, the controversy is whether United is obligated to pay 100% of the amounts billed by Defendants, or whether United may pay an amount that is consistent with the Plans.  Stated differently, the record shows that Defendants have submitted claims for services provided to United's members in Georgia and have demanded their full billed charges in each case.  The record also demonstrates that United has consistently not paid the full amount and instead followed what it believes is its obligation to pay the claims according to the Plans' reimbursement terms.  Under these facts, the Court is satisfied that this case involves "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  See Atlanta Gas Light Co., 68 F. 3d at 414.  To the extent that

Defendants argue that dismissal is required because the case does not present a live controversy, Defendants' Motion to Dismiss is **DENIED**.

## II. The Exercise of Discretion

Defendants alternatively argue that the Court should exercise its discretion and deny declaratory relief. As stated previously, the DJA provides that courts "*may* declare the rights and other legal relations of any interested party seeking a declaration." 28 U.S.C. § 2201(a) (emphasis added). The use of the word may "vests district courts with discretion to dismiss declaratory suits when, in their best judgment, the costs outweigh the benefits." James River Ins. Co. v. Rich Bon Corp., 34 F.4th 1054, 1059 (11th Cir. 2022). The Eleventh Circuit has set forth the following factors to consider:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

    (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

    (6) whether there is an alternative remedy that is better or more effective;

    (7) whether the underlying factual issues are important to an informed resolution of the case;

    (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005).[8] This list of factors is "neither absolute nor is any one factor controlling; these are merely guideposts." Id.

    In Defendants' view, the Court should decline to exercise jurisdiction because the claims at issue in this case are different than those in the other lawsuits

---

[8] While the Ameritas case involved parallel proceedings in both state and federal court, "the existence of a parallel proceeding is not a prerequisite to a district court's refusal to entertain an action under [the DJA]." Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc., 12 F.4th 1278, 1284 (11th Cir. 2021).

13

that were previously filed.⁹  Defendants also contend that the Court should use its discretion and not hear the case because the preemption issue has already been clearly decided in their favor.  Defendants point to no other reasons that this Court should abstain.  Defendants also do not cite any cases which would show that other courts have elected to dismiss in situations like these.

The Court is not persuaded that it should exercise its discretion and dismiss this case at this stage of the proceedings.  After reviewing the record, it appears that a judgment in this action would settle the controversy between the parties as to all Georgia claims.  Moreover, a declaratory judgment would clarify the legal relations at issue between the parties.  Simply put, this is not a case where there is a real prospect of a non-judicial resolution of the dispute or where conservation of judicial resources weighs heavily in favor of declining to exercise jurisdiction.

---

⁹ The other lawsuits concern reimbursement for out-of-network services performed at in-network hospitals.  The primary claims in this case involve out-of-network services rendered at out-of-network hospitals.

Thus, to the extent that Defendants seek dismissal on this basis, the motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint for Lack of Subject Matter Jurisdiction [Doc. 29] is **DENIED**. All other pending motions [Docs. 38 and 39] are **DENIED** as moot.

**SO ORDERED** this 16th day of August, 2024.

J. P. BOULEE
United States District Judge